JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: Washtenaw

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

In the matter of Jacob O'Mara

**(b)** County of Residence of First Listed Plaintiff    Washtenaw
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Patricia E. Kefalas Dudek & Associates by Patricia E. Kefalas Dudek
30445 Northwestern Highway, Suite 310
Farmington Hills, MI 48334
(248) 254-3462

## DEFENDANTS
Community Mental Health of Washtenaw County
Michigan Department of Health and Human Services
Elizabeth Hertel, Director of the Michigan Department of Health & Human Services

County of Residence of First Listed Defendant    Washtenaw
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
          THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark ☐ 880 Defend Trade Secrets | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Property Damage ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | Agency Decision ☒ 950 Constitutionality of |
| | ☐ 448 Education | ☒ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| September 28, 2021 | *Patricia EK Dudek* |

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.　　　Is this a case that has been previously dismissed?　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　■ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.　　　Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other　　☐ Yes
court, including state court? (Companion cases are matters in which　■ No
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes : Adding Defendant Governor Gretchen Whitmer

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of Jacob O'Mara,
a person with developmental disabilities,
by and through his co- Guardians, Jeffrey and Andrea O'Mara;

Plaintiff.                                          Case No.
                                                    Hon.

v.

Community Mental Health of Washtenaw County,
Michigan Department of Health and Human Services,
Elizabeth Hertel, Director of the Michigan Department of Health and Human
Services (AKA MDHHS),
Michigan Governor Gretchen Whitmer.

Defendants.

_____/

Patricia E. Kefalas Dudek (P46408)
Patricia E. Kefalas Dudek and Associates
Attorney for Plaintiff
30445 Northwestern Highway, Suite 310
Farmington Hills, Michigan 48334
pdudek@pekdadvocacy.com
(248) 254-3462

_____/

## COMPLAINT FOR ADA VIOLATION(S), UNCONSTITUTIONALITY AND VIOLATIONS OF SECTION 504 OF THE REHAB ACT

NOW COMES PLAINTIFF, In the matter of Jacob O'Mara, (Herein referred to

as "Jacob") a person with significant developmental disabilities (autism), by and

1

through his co-Guardians, Jeffrey and Andrea O'Mara, and by and through their attorney Patricia E. Kefalas Dudek of Patricia E. Kefalas Dudek & Associates, for his Federal Complaint states as follows:

## PARTIES AND JURISDICTION

1.     Jacob O'Mara is a 22-year-old (D of B is 7/24/99) Medicaid beneficiary who is autistic, non-verbal and has severe intellectual disabilities and qualifies as a person with a developmental disability pursuant to MCL 330.1100a(25), and a person with a disability.

2.     Jeffery and Andrea O'Mara are Jacob O'Mara's parent and co-Guardians by the Washtenaw County Probate Court. (*Letters of Guardianship, Attachment 1.*)

3.     Jacob O'Mara resides in his own condo which was built specifically for him in Saline, Michigan. (*Letter from Builder, Attachment 2*)

4.     Defendant Washtenaw County Community Mental Health (hereinafter referred to as WCCMH) provides Medicaid waiver covered services to people, like Plaintiff, who reside in the service area and have a developmental disability.

5.      Defendant Michigan Department of Health and Human Services ("MDHHS") oversees the Michigan Medicaid program and implementation, and contracts with Washtenaw County Community Mental Health and other agencies to do same.

6.      Defendant Elizabeth Hertel is the Director of the Defendant MDHHS and oversees the Defendant MDHHS, and its contract agencies, including but not limited to Defendant WCCMH and the entire Michigan Medicaid system and public mental health system.

7.      Defendant Gretchen Whitmer is the Governor of Michigan and oversees and/or is in charge of all departments of the Michigan government including Defendant MDHHS, and the State Medicaid Agency (herein referred to as MSA).

8.      This Court has jurisdiction pursuant to Title II of the American's with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA"); 42 U.S.C. §1983; Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"); and/or pursuant to 28 U.S.C. §1343(a)(4). Furthermore, there is a claim of unconstitutionality of the lack of appropriate due process that meets the requirements of Goldberg v Kelly, 397 US 254 (1970) and codified in the code of Federal Regulation 42 CFR 431.206, 431.210.

9.      Venue is proper in this Court under 28 U.S.C. §1391(b) because the events giving rise to Plaintiffs' claims occurred in Washtenaw County and the Defendant is under contract to provide Medicaid covered services for this area to folks with developmental disabilities and pursuant to MCL §330.116(2).

## FACTUAL ALLEGATIONS

10.     Plaintiff incorporates and restates the allegations in paragraphs 1 through 9 as if fully set forth herein.

11.     November 1, 2020, Jacob has resided at a home specifically built for his unique needs it is his home and is owned by a Third-party special needs trust for his use. He was supposed to receive, as part of his Medicaid Habilitation Supports Waiver Program, Community Living Supports ("CLS") which included medically necessary supervision to his medical conditions and behaviors as a result of his disability, as Defendant WCCMH had previously concluded that such care was medically necessary, and this setting was the least restrictive setting for him in his Individual Plan of Services dated 9/23/2020. *(Attachment 5)*

12.     In November 2020, Defendant WCCMH terminated Jacob's CLS hours/benefit despite no change in Jacob's condition, no change in the law and no change in Michigan's Habilitation Supports Waiver or the Michigan Medicaid Provider Manual, in the definition of CLS. Upon information and believe they

changed their position due to some type of communication from MHHS and or the State of Michigan requiring services to be allocated on a per diem basis for folks with high support needs for CLS services. *(Attachment 11, page 4 and 5).*

13.    At no point, did Defendant WCCMH send a legally valid termination notice of the termination of services to Plaintiff detailing the reasons for the change in coverage, as required by law.  42 C.F.R. 431.201; 42 C.F.R. 210.  In fact, the written notice stated the services were not appropriate, however the services would be the same services (community living supports) provided in a "specialized residential setting". WCCMH objected to the setting NOT the services but again, how would anyone understand that by the words they used?

14.    Although this is not clear, the denial appears to offer a specialized residential setting or group home instead of the CLS services to Jacob in his own home. A group home is not a covered service nor is specialized residential under the Medicaid waiver Jacob has. Then they claim he may be able to "grow" in order to deserve the CLS services. This is an unprecedented requirement, and no legal authority requires that an individual earn the right to receive services in their own home. They are entitled to have the services reasonably accommodated to suit their needs. There is no reason why WCCMH could not have just authorized CLS in that setting in a different amount duration and scope.

15.   This termination of Jacob's CLS was done without proper due process notification as required by law, as the notice did not state a valid reason for termination of services; and listed the incorrect services as children's waiver services. (*Attachment 7*).   Defendant claims that they used the billing code, however, no beneficiary with disabilities knows the "billing codes" for the specific Medicaid waiver services (frankly any services) they receive.

16.   The use of the term "appropriate" is not used in the Medicaid Statute, and the notice did not address the appropriateness of the services, only the setting. In fact, even in the licensed and more restrictive setting of a "specialized residential placement" the Medicaid waiver services at issue would largely if not exclusively be the same, Community Living Services. Therefore, WCCMH should have outlined the specific amount duration and scope of services, not WHERE they could be provided.

17.   Several days later, on or around the November 16th, the Plaintiffs received a letter from the Executive Director of WCCMH, Trish Cortes, dated November 13th admitting that "we did state that we would approve 24-hour support 7 days a week for your loved one." *(Attachment 8)*

18.   The letter also states that their "determination was premature," and "Unfortunately, we do need to follow our process."   However, the facts will

demonstrate that they did in fact follow the procedures when the IPOS approving the services was created.

19.     Then she asks for the family to allow their son to "complete the standard CLS request process," and outlines that this includes: "a CLS assessment Bio-Psycho-social update, and presentation to utilization management on request/clinical assessment." It appears upon a review of the facts that is the exact same process that was already followed. *(Attachments 9 and 10)*

20.     CMH admitted in their pleadings for a pending Medicaid fair hearing that Jacob formally became re-engaged with WCCMH as of February 2020. Then they claim that "it came to the attention of WCCMH administration in November of 2020 that despite the CLS goal having been included in the IPOS, a CLS assessment still had not been completed. Once the CLS assessment was completed and a CLS contract offered to provide the staffing, the request for CLS services became actionable rather than anticipated and the formal authorization requestion could be reviewed by the Utilization Management Department."

21.     This means that WCCMH claims that the new assessment is what caused the utilization department to over-ride the plan of services. The assessment attached to the pleading is dated 12/20/2019 not 2020. Their position is meritless.

22.     It appears that the assessment was exactly the same one they used in 2019., or if we take WCCMH on their word a new assessment was done on or around 11/2/2020, so BEFORE the letter from the Director of WCCMH. Again, these dates were admissions in the tribunal by the agencies.

23.     Jacob's LLP, however had a case note in his file dated 8/25/2020 that reads: "The writer spoke with SC Cheryl Petty regarding a housing update and need for behavioral treatment plan to be developed (plan had been on hold due waiting for administration's decision on level of staffing approved for Jake). If Jacob was a client of WCCMH as of 2/2020 and he still was not getting services as of 8/25/2020 then WCCMH violated the Medicaid standard of reasonable promptness already, 42 USC 1396a and CFR 435.911(a) which requires services to be provided within 45 days from application. *Attachment 3.*

24.     As of September 2021, a full year from the agency created a plan of services which included 24/7 CLS services Jacob has still not received ANY Medicaid services in violation of federal law. 42 CFR 438.408(b)(4) which states that a PIHP, in this case WCCMH failed to provide services within 14 calendar days of the start date agreed upon in the person-centered planning and as authorized by the PIHP.

25.     In the same case note dated 8/25/2020, Brianne Martis, the LLP working with Jacob, wrote: "Cheryl reported that Jacob had been approved for

24/7....". So, it appears he was approved for the services even before the plan of service was drafted for him in September. This is contrary to the Agency's position in their pleadings for the administrative appeal. *(Attachment 9)*

26.     On 9/2/2020 Jacob's Case manager, Cheryl Petty, wrote a progress note that included 24 hours a day, 7 days a week CLS in his plan of services. Again, there is no way for Jacob or his family to know that some procedure was not followed so although the services were approved, they were technically not authorized yet according to WCCMH. *(Attachment 4)*

27.     On 10/6/2020, after the IPOS but before the denial letter, Jacob's case manager Cheryl met with Jacob and his family. In this case note she express confusion as she has now been told to tell the families, two different things related to how services can be provided in that setting. *(Attachment 6)*

## COUNT I
## VIOLATION OF 42 U.S.C. §1983

28.     Plaintiff has a federal right to be free from discrimination and/or harassment based upon the nature of his disability pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act").

29.     Under the Due Process clause of the Fourteenth Amendment to the United States Constitution, (THE SAME EXACT LANGUAGE IS INCLUDED IN THE MICHIGAN CONSTITUTION) individuals have the right to a meaningful notice and an opportunity to be heard before their assistance under Medicaid is terminated.

30.     The individual rights established by the due process clause of the Fourteenth Amendment are enforceable under 42 U.S.C. 1983.

31.     Under the federal regulations that interpret and apply the federal Medicaid statute and the due process clause of the Fourteenth Amendment to the United States Constitution, individuals have the right to a pre-termination notice that fully explains the factual and legal basis for the proposed termination. That did not happen here for Jacob.

32.     Defendants acted under the color of state law and used and abused its

power of office when Defendants arbitrarily deprived Plaintiff of Medicaid CLS

services and otherwise discriminated against Plaintiff based upon the nature of his

disability as set forth in the factual allegations of this Complaint, paragraphs 1-14 ;

and violated his right to receive services suited to his condition and that those

services must be provided in the least restrictive setting (which are both required

by Michigan's Mental Health Code as well). Defendants did not give proper notice

or due process to Plaintiff prior to terminating waiver services for medically

necessary services as required by law, 42 C.F.R. 210; 42 C.F.R. 201.

33.    The services were denied/terminated, even though the agency implies

that they could be "earned" and that another service called specialized residential

was more appropriate. This is also incorrect as even in that more restrictive setting

the services are still CLS they are just approved on a per diem rather than an hourly

rate. Lastly, specialized residential IS NOT A COVERED SERVICE in the Medicaid

waiver and WCCMH clearly knew or should have known that. So, the termination

letter *(Attachment 7)*, should have explained that CLS could still be provided at a

"Specialized Residential" and it should have put the amount, duration and scope of

those services.  Clearly, a per diem is difficult to determine if it is "appropriate" if

no details as to what the per diem actually is.  How on earth can any professional

take the position that this notice is adequate for the consumer to understand what

is going on and why if they were terminating services would they not try a reduction of services before termination?

## COUNT II
## DISABILITY BASED DISCRIMINATION IN VIOLATION OF
## TITLE II OF THE AMERICAN'S WITH DISABILITIES ACT, 42 U.S.C. 12132

34.    Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

35.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2). He is not required to earn the right to live in his own home.

36.    Defendant Washtenaw Community Mental health is a public entity for The purposes of the ADA pursuant to 42 U.S.C. §12131(1) and receives both federal and state funding. The State of Michigan is also a public entity for the same purposes.

37.    The ADA and its implementing regulations along with the *Olmstead v L.C.*, 527 U.S. 581 (1999) decision mandate that public entities administer services, programs, and activities in the most integrated setting appropriate to the needs of the qualified individuals with disabilities. There is no question in this case that Jacob meets that qualification.

38.    The most integrated setting is one that enables individuals with

disabilities to interact with nondisabled persons to the fullest extent possible. 28 C.F.R. §35.130(d).   There is no requirement that a person earn this right by controlling their disability. If so, the right would be meaningless.

39.     On June 22, 2011, the Department of Justice released a Statement reiterating that enforcing the Integration Mandate of Title II of the ADA and *Olmstead* case was a top priority. (*Attachment 12).* This notice makes it clear that people with disabilities do not have to EARN the right to live in their own homes. And the risk of being removed from their home and being placed in a group home is enough to be an ADA violation.

40.     Defendants arbitrarily deprived Plaintiff by terminating CLS benefits for the medically necessary supervisory care before Jacob could even move into his new home.   Further, no other appropriate services were addressed, only that Plaintiff's needs were so high services needed to be provided in a "Specialized Residential" setting.  This type of licensed setting is not a covered service under Medicaid and this action directly conflicts with the stated requirements of the *Olmstead* decision. In other words, they claimed that due to the nature of his disability he was ineligible to get services in a setting that was unlicensed, built for him, and that enables him to interact with nondisabled residents in the community

to the fullest extent possible. Please note that Jacob has never lived in any type of licensed setting.

41.     Due to Defendants' arbitrary and unconstitutional conduct of depriving Plaintiff of Medicaid waiver CLS services for medically necessary supervisory care while Plaintiff is living in his own, unlicensed setting puts Jacob at risk of being forced to a more restrictive setting. In fact, that is exactly what the state via its agent defendant WCCHM mandated.

42.     Defendants' actions directly contravene the requirement to integrate persons with disabilities into the community as mandated by the Supreme Court in *Olmstead* and they claim that Jacob must "begin showing growth in areas of increased independence, improved communication and completion of activities of daily living, CLS services can be explored at that time". *(Attachment 7).*

43.     The Supreme Court in the *Olmstead* Decision ruled that Medicaid and mental health services and supports must be provided in the least restrictive setting as long as:  **1**) the person with a disability wants to live in that setting. Clearly, Jacob and his co-Guardians want this.  In fact, they went out of their way to provide the appropriate and affordable housing option for him; **2**) the services can be reasonably accommodated in that setting taking into account resources available to the public entity and the needs of others that need those services.

Here, the waiver that Jacob qualifies for can reasonably accommodate the services in that location.  In fact, the fall of 2020 the WCCMH developed an individual plan of service through a person-centered process and the stated goal was for JACOB to move into his own home. Reasonable accommodation defined as something that can be accommodated without a substantial alteration of the program or service the public entity is providing.  Clearly that can be accommodated for Jacob as the Michigan Medicaid Habilitation supports waiver specifically says that its stated purpose is to keep folks in the least restrictive setting; **3)** the services are appropriate.  They were/are still appropriate, contrary to what the Defendant claims. CLS services are what pays for services in a specialized residential placement, so the notice is factually and legally incorrect. As a result, this notice fails to provide enough information for a beneficiary to reasonably understand what is happening and how to defend it.

44.   Another one of the many stated reasons for the termination of Jacob's services by Defendants was that WCCMH staff failed to follow the proper procedures for authorizing the CLS services. Jacob should not be forced into a more restrictive setting for no fault of his own.  It is still unclear exactly what "procedure" was not followed.

45.   The services at issue, Community Living Supports Services are how the

services in a specialized residential setting (or a licensed group home) are paid for. Thus, the services were appropriate as "admitted" by the Plaintiff.  The setting and the setting alone are what WCCMH determined to be inappropriate.  However, their stated reason for this was because of his needs as a person with autism, and that he needed to learn to "grow" to be independent.

46.    The state of Michigan does not have an Olmstead implementation plan, and recently proposed the development of new institutions to be built to provide mental health beds for folks like Jacob. They are clearly not living up to their obligation to provide the services consistent with the integration mandate of the ADA, Thirty years after it became Federal Law.[1]

47.    The ADA provides, "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the ADA." 42 USC 12203(a).

48.    Non-disabled people who have "opposed any act or practice made unlawful" by Title II of the ADA have standing to sue under the anti-retaliation provision of the ADA. *Baker v. Riverside City Office of Edu, 584 F 3d 821, 827 (9th Circuit, 2009).* Therefore, Jacob's guardians and parents have standing to raise this claim for a violation of the ADA in their own right.

## COUNT III
## RETALIATION VIOLATION THE REHABILITATION ACT
## 29 U.S.C. §701 et seq.

49.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

50.     Plaintiff is a "disabled/handicapped" individual as defined in 29 U.S.C. §705.

51.     The Rehabilitation Act and its implementing regulations provide protection against retaliation. Any, individual, disabled or not is protected from retaliation for exercising their rights. This provision has been interpreted to have as broad coverage as possible. In this case, the state has retaliated against Jacob and his advocates/guardians.

52.     Jacob is also entitled to Medicaid long term services provided by the State of Michigan, called Adult Home Help Services.

53.     These services are administered by the Plaintiff Michigan Department of Health and Human Services and provides personal care services to individuals who need hands-on assistance with activities of Daily living and assistance with Instrumental activities of Daily Living.

54.     These services are provided by and through the Michigan Medicaid State Plan, consistent with 42 CFR 430.10 the Medicaid state plan is a

17

comprehensive written statement describing the nature and scope of the

Michigan Medicaid program.

55.    According to the MDHHS web site the plan is: "a comprehensive

written statement describing the nature and scope of the Michigan Medicaid

program giving assurance that it will be administered in conformity with the

specific requirements of the laws, including the due process provisions referred to

earlier in this document".

56.    In the WCCMH's pleadings during a Medicaid Fair hearing pending on

this matter, the county made the decision to deny services because the services

was not "appropriate", *(ATTACHMENT 12 & 13, BUT LABELED EXHIBIT E FOR

ADMINISTRATIVE ACTION)*. This is dated as updated on 11/22/2019 but the

WCCMH admitted this document as evidence of how and why the services were

denied. In addition, the document specifically states that an Adult Home Help

referral needs to be completed. It never happened.

57.    Jacob and his family have been advocating for this service since the

denial from WCCMH was received. Jacob's dad was told that he could not get

these services until the dispute with WCCMH is resolved.

58.     There is no such requirement, and in fact this violates specific language related to the use of state plan services in the Michigan Medicaid Manual.

59.     This is specific retaliation by both WCCMH and the State of Michigan through DHHS.

60.     As of 9/26/2021 Jacob has not received any Medicaid state plan services, including adult home help services. This is a violation of the standard of reasonable promptness.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

A.      A declaration that Defendants violated Plaintiff's rights under Section 504 of the Rehabilitation Act and the ADA and the due process provisions of *Goldberg v. Kelly* as codified in the code of federal regulations.

B.      Reasonable attorney fees and costs pursuant to 42 U.S.C. §1988 and the ADA;

C.      Compensatory costs, interest and attorney fees, to which Plaintiff is found to be entitled under the court rules; as this proceeding and their position lacks merit.

D.      Damages against Defendants in whatever amount, (costs, interest and attorney fees), to which Plaintiff is found to be entitled and awarded to the fullest extent available under the law, at the minimum the retroactive Medicaid services at amount duration and scope outlined in the September 2020 the plan of service;

E.      An order placing Plaintiff in the position he would have been in had there been no violation of his rights under the ADA, 504 of the Rehab Act, and the due process protections of *Goldberg v. Kelly* .

F.      Take other appropriate nondiscriminatory measures to overcome the

above described discrimination; including but not limited to ordering Washtenaw

County CMH, and the State of Michigan to: A) Immediately reinstate Medicaid

Waiver services pursuant to the plan of service; B) Reimburse the family who has

either provided the Medicaid services so Jacob could still move into his home or

privately paid for them (without a new assessment, etc.); C) Stop retaliating against

Jacob and his Advocates and provide the Adult Home Help State plan services

immediately retroactively to 11/22/2019/ ; D) Stop making unilateral placement

decisions for the folks they serve.  There should be no procedure or contract that

allows the State or its agents to force anyone into "Specialized Residential" services

when CLS services can appropriately be accommodated pursuant to the integration

mandate of the ADA; and no Michigan citizen with a disability should ever again be

told they are unable to live in their own home until they "grow" more independent.

G. Order MDHHS to require adult home help to be retroactively provided to

the date the Guardian should have been given a referral for these services, as

admitted by WCCMH should have done that on 11/22/2019.

H. Order the state of Michigan, by and through the Governor and the

Director of MDHHS immediately give direction to their agents that cost measures

can not over-ride the integration mandate of the ADA and the Olmstead decision,

21

and that the state has been in violation of same as it relates to Jacob and other Michigan citizen that have been told they have to earn their way into living or remaining in the community.

I. Granting any other relief which this Honorable Court deems equitable and appropriate under the circumstances.


By:    /s/ Patricia E. Kefalas Dudek
Patricia E. Kefalas Dudek (P46408)
Patricia E. Kefalas Dudek and Associates
Attorney for Plaintiff
30445 Northwestern Hwy., Suite 310
Farmington Hills, Michigan 48334
pdudek@pekdadvocacy.com
(248) 254-3462

Dated:      9·28·21   .